THOMPSON v. HODGES.

No. 12204.

Court of Civil Appeals of Texas.
San Antonio.

Jan. 31, 1951.

Rehearing Denied March 7, 1951.

Sharpe, Cunningham & Garza, Brownsville, for appellant.

Bowie & Scanlan, Wm. Scanlan, all of Brownsville, Shirley M. Helm, W. J. Kronzer, Jr., and Albert P. Jones, all of Houston, for appellee.

W. O. MURRAY, Chief Justice.

This suit was instituted by R. A. Hodges against Guy A. Thompson, Trustee for St. Louis, Brownsville and Mexico Railway Company, in the District Court of Cameron County, seeking to recover damages for personal injuries alleged to have been received by him when an assault and battery was committed upon him by one J. A. Pitcock on January 30, 1949, while Pitcock

was serving as yard master for the defendant at Brownsville, Texas. .

The trial was to a jury and judgment was entered in favor of R. A. Hodges against Guy A. Thompson, in his capacity as Trustee for The St. Louis, Brownsville and Mexico Railway Company, in the total sum of $8,750, based upon the jury's answers to the special issues submitted to them. Guy A. Thompson as such Trustee has prosecuted this appeal.

The jury found in answer to Special Issue No. 1, that J. A. Pitcock, in using physical force upon plaintiff, R. A. Hodges, on the occasion in question, was acting within the scope of his employment with the Railway Company.

Appellant presents the contention that there is no evidence to support this finding, and in any event the evidence is insufficient to support the finding. We overrule this contention. R. A. Hodges was a member of a switch engine crew that was on duty in the railroad yards of appellant on January 30, 1949, at the same time that J. A. Pitcock was on duty as yard master for appellant. Shortly after 7:00 p. m. engine foreman Webb suggested that the crew could eat, and engineer Cleveland agreed, Hodges being temporarily absent at the time. Apparently all the crew members had brought their lunches with them and were preparing to eat when Pitcock saw Hodges walking past the yard office, and, approaching him, asked if he had eaten. On learning that Hodges had not eaten, Pitcock informed him that he had only twenty minutes in which to eat and that he could not use the switch engine to ride to town as a "jitney." It seems that the crew had been in the habit of using the switch engine to go about five-eighths of a mile down the track to a cafe when they desired to eat. Hodges retorted that he could not eat in twenty minutes and suggested that inasmuch as Mr. Judd, Division Superintendent, and Mr. Barksdale, the Train Master, were in town that Pitcock should submit the controversy to them. Whereupon, Pitcock left and returned in about ten minutes stating that he had been unable to contact either Judd or Barksdale. Hodges suggested that Pitcock try to reach them at the hotel by telephone as he had an "eating contract." The eating contract is defined by Hodges as part of his union contract stating when and how long he had to eat while on duty. Hodges then began to make gestures and point his finger in Pitcock's face. Pitcock was heard to say "take your finger out of my face." Hodges was heard to reply that if Pitcock were not an old man he would slap him. Then the fight began with Pitcock striking the first blow. Hodges was knocked down twice and then kicked off the platform. Hodges contends that as a result of this beating he received serious and permanent injuries.

J. A. Pitcock was the yard master and was in charge of the property of the railroad in the yard, including the switch engine. It was his duty to see that the switch engine was not used for unauthorized purposes. The question here presented is whether or not the assault and battery which Pitcock committed on Hodges grew out of the performance of his duties as yard master. Pitcock had informed Hodges that he could not use the switch engine as a "jitney" and that he had only twenty minutes in which to eat. Hodges had challenged this statement by saying that he could not eat in twenty minutes and demanded that Pitcock take the matter up with his superiors. While this discussion was still going on the fight started and assault and battery was committed upon Hodges. The jury found that the assault and battery was committed by Pitcock while acting in the scope of his employment. The evidence clearly raised the issue and it was properly submitted to the jury. The evidence was sufficient to support the finding of the jury. Gulf, C. & S. F. Railroad Co. v. Cobb, Tex.Civ.App., 45 S.W.2d 323; Houston Transit Co. v. Felder, 146 Tex. 428, 208 S.W.2d 880; Central Motor Co. v. Gallo, Tex.Civ.App., 94 S.W.2d 821; Texas & Pacific Railway Co. v. Crown, Tex.Civ. App., 220 S.W.2d 294.

Appellant next contends that the trial court committed reversible error in not submitting an issue of proximate cause with reference to the injuries allegedly sustained by Hodges. We overrule this

contention. The evidence conclusively shows that Hodges was injured as a direct result of the assault and battery committed upon him by Pitcock. In such cases it is not proper nor necessary to submit the question of proximate cause. The assault and battery was willfully and intentionally committed by Pitcock upon Hodges and was of such a severe nature as to clearly indicate that Pitcock intended to injure Hodges. The law will presume that a person willfully assaulting another intends the direct and immediate consequence of his acts. Eastern Texas Electric Co. v. Baker, Tex. Civ.App., 238 S.W. 335; Garrison v. Sun Printing and Publishing Ass'n, 207 N.Y. 1, 100 N.E. 430, 45 L.R.A.,N.S., 766; Den Norske Ameriekalinje Actiesselskabet v. Sun Printing & Publishing Ass'n, 226 N.Y. 1, 122 N.E. 463. In 25 C.J.S., Damages, § 25b, p. 489, the rule is stated thus: "In the case of willful torts the wrongdoer is responsible for the direct and immediate consequences regardless of whether they might have been contemplated, foreseen, or expected."

In 4 Tex.Jur., § 135, p. 1001, the rule is thus stated: "Where the assault and battery is shown to have been wilful, the assailant is presumed to have intended the consequences of his act, and the question of proximate cause is not an issue of fact; hence the court should not submit an instruction thereon."

See also, St. Louis, Southwestern Railway Co. v. Alexander, Tex.Civ.App., 141 S.W. 135, affirmed 106 Tex. 518, 172 S.W. 709; Railey v. Hopkins, 62 Tex.Civ.App. 544, 131 S.W. 624; Humble Oil & Refining Co. v. Wood, Tex.Com.App., 292 S.W. 200.

■. Appellant next complains because the trial court did not submit his three specially requested issues, the first two of which inquired of the jury whether the assault and battery was solely caused by the personal animosity of Hodges and Pitcock, and the third as to whether or not Hodges was the aggressor. The trial court properly refused to submit the first two specially requested issues. The trial court did submit to the jury in his main charge the question as to whether Pitcock in making the assault was acting in the course of his employment, which the jury answered in the affirmative. If the assault and battery had been solely caused by the personal animosity of the parties, then, of course, it would not have been in the course of Pitcock's employment. The controlling issue here was whether or not Pitcock in making the assault and battery upon Hodges was acting in the course of his employment, and if he was not acting in the course of his employment, then it would be immaterial just why the assault and battery took place. The first two issues requested by appellant were merely varying phases or different shades of the issue which had already been submitted to the jury. Under the provisions of Rule 279, Texas Rules of Civil Procedure, where an issue has been fairly submitted to the jury the case will not be reversed for the failure to submit other and various phases or different shades of the same issue. Houston Transit Co. v. Felder, 146 Tex. 428, 208 S.W.2d 880.

■ The same thing is true with reference to appellant's third specially requested issue, asking whether or not Hodges was the aggressor in the fight. The court submitted the question of whether Pitcock acted in self-defense and this was the controlling issue. The court was not required to submit an issue as to whether or not Hodges was the aggressor, which would in effect be the same issue as whether or not Pitcock acted in self-defense. Pressler v. Moody, Tex.Civ.App., 233 S.W.2d 165; Wassenich v. Evans, Tex.Civ.App., 150 S. W.2d 320.

■ Appellant next complains because the trial judge permitted the jury to assess damages for the loss of earning capacity in the future, contending that there was neither pleading nor proof to support this item of damage. Both the pleading and the evidence were sufficient to sustain this item of damage. The petition included the statement, "In the future it is reasonably probable that your plaintiff will suffer from impaired earning capacity as long as he lives." The nature and extent of the injuries were set forth in detail in the pleadings. The testimony of Hodges and Dr.

David, regarding the nature, extent and duration of the injuries and disabilities inflicted upon Hodges as a result of the assault and battery, is sufficient to support the jury's answers as to this item of damage. Dallas Railway & Terminal Co. v. Guthrie, 146 Tex. 585, 210 S.W.2d 550; McIver v. Gloria, Tex.Civ.App., 163 S.W. 2d 890; Thomas v. Pugh, Tex.Civ.App., 6 S.W.2d 202; Dallas Railway & Terminal Co. v. Darden, Tex.Com.App., 38 S.W.2d 777; Wells v. Ford, Tex.Civ.App., 118 S. W.2d 420; Missouri, K. & T. Railway Co. of Texas v. Johnson, Tex.Civ.App., 37 S.W. 771.

Accordingly, the judgment of the trial court is affirmed.