# Interstate Co. *v.* McDaniel.

(Division B.   March 15, 1937.)

[173 So. 165.   No. 32641.]

G. H. McMorrough, of Lexington, for appellant.

**S. R. King,** of Durant, and **E. T. Neilson,** of Lexington, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellee, R. Ernest McDaniel, brought this action against appellant, the Interstate Company, in the circuit court of Holmes county to recover damages for an injury received by him ,as the result of an alleged unjustifiable assault and battery committed on him by one Jones, a servant of appellant, and charged to have been committed by the servant when engaged about his master's business. There was a trial resulting in a verdict and judgment in the sum of $2,995. From that judgment, the Interstate Company prosecutes this appeal.

Only two of the assignments of error have sufficient merit to call for a discussion by the court. They are, whether appellant was entitled to a directed verdict, and, if not, whether a new trial ought to have been granted on the ground that the verdict was excessive, that being one ,of the grounds of the motion for a new trial, which was overruled. The questions will be disposed of in the order stated.

Appellant is a corporation organized and existing under the laws of the state of Delaware and engaged in operating lunch rooms, cafes, and in selling fruit and other merchandise on passenger trains. It had a contract with the Illinois Central Railroad Company to sell fruit, soft drinks, and other edibles on some, if not all, of its passenger trains running through Mississippi. Its

business on the trains was through the agency of what is commonly known as a "news butch," who also sold newspapers and magazines. One of these servants was C. C. Jones. On the night of June 21, 1936, the Illinois Central Railroad Company ran an excursion train from Durant, in this state, to Memphis, Tenn. Jones was in charge of appellant's business on that excursion train. Appellee was a passenger thereon. Appellee was drunk —he admitted that he had been drinking and did not deny that he was drunk. All the evidence showed beyond any question that he was drunk and was in a drunken sleep when Jones committed the assault and battery on him for which he sued. Jones had his merchandise stand in the car in which appellee was riding. He was engaged, as usual, in filling his basket and going back and forth through the coaches making sales. In his rounds he returned to the coach in which appellee was riding and thought he saw evidence that in his absence appellee had taken some of the oranges from the stand. Appellee testified as to the assault and battery in this language: "Q. Did anything happen between you and Mr. Jones? A. Nothing only he came through the coach there, and I was sitting there about half asleep. He shook me and said: 'Fellow, I want you to quit stealing my oranges.' I told him he was a damned liar, I didn't do it. He called me a son of a bitch and hit me and cut my eye terrible and he went on through out of the coach."

Jones' duty did not stop with selling and collecting for the merchandise. He was required to protect it within reasonable bounds from depredations, and if in doing so he went a step too far, was his act, nevertheless, that of his master? From the evidence in this case, we think that question must be answered in the affirmative, under the authority of Richberger v. American Express Co., 73 Miss. 161, 18 So. 922, 31 L. R. A. 390, 55 Am. St. Rep. 522, and Singer Sewing Machine Co. v. Stockton, 171

Miss. 209, 157 So. 366. Where the injurious act complained of is not so separated by time and logical sequence from the business of the master as to make it a separate and independent transaction, the master is not relieved of liability. Where the whole transaction, as here, consumes only a few moments and has all the features constituting one continuous and unbroken occurrence, a master is not relieved of liability because the servant stepped outside of his authority. There was no error, therefore, in refusing appellant a directed verdict.

The blow appellee received made cuts above and below his eye, and caused his eye to be inflamed for sometime. Dr. Howell treated the wound on six successive days after it had been inflicted. He testified that he was not an eye specialist and did not know whether the injury was permanent or not. Appellee's own testimony as to its permanency was weak and unsatisfactory. We have here appellee in a drunken sleep; Jones conceived from appearances that he had been taking his oranges; he charged him with it; appellee replied that Jones was a "damned liar;" Jones responded that appellee was a "son of a bitch," and at once inflicted the blow causing the wound.

We think the verdict is too large—so large as to evince passion or prejudice on the part of the jury—and that $1,500 would be ample compensation, as well as punishment, for the wrong inflicted on appellee. If a remittitur down to that amount is not entered by appellee within ten days, the judgment will be reversed, and the cause remanded for a new trial on that ground alone.

Affirmed with remittitur.