**Marvin K. CHAMBERLAIN, Appellant,**

**v.**

**NORTH CENTRAL INVESTMENT COR-
PORATION et al., Appellees.**

**No. 7850.**

Court of Civil Appeals of Texas.

Amarillo.

Aug. 26, 1968.

Rehearing Denied Sept. 23, 1968.

Boyd Knudtson, Amarillo, for appellant.

Sanders, Scott, Saunders, Brian & Humphrey, and Robert H. Smith, Amarillo, for appellees.

DENTON, Chief Justice.

Marvin K. Chamberlain brought suit against North Central Investment Corporation, George Bayoud and wife, Joan Bayoud for damages for fraud and misrepresentation in the sale of a tract of land in New Mexico. By cross-action, the defendants seek recovery on the promissory notes executed by Chamberlain as part of the purchase price of the property. The trial court instructed a verdict for the defendants against plaintiff's cause of action and on their cross-action.

North Central Investment Corporation, a family corporation owned principally by George Bayoud and wife, owned a 36-acre tract of land near Ruidosa, New Mexico.

They reside in Dallas, Texas, and during the latter part of 1964 they listed this property with the Multiple Listing Service of the Dallas Real Estate Board. Mrs. Alta Warren, a real estate salesman with the Judge Fite Company, a realty company and a member of the Dallas Multiple Listing Service, noticed the listing and contacted appellant in Amarillo regarding his interest in purchasing this property. Mrs. Warren, the aunt of appellant's wife, took Mrs. Chamberlain and the latter's mother to look at the property. The information card given Mrs. Warren by the Multiple Listing Service described the New Mexico property as follows:

"3 miles from race track in Ruidosa Downs, Hill with view of track. Ideal for cabins or motor lodge, private road highway from Roswell, adjoins Santa Clause Ranch. Will consider trade small house, oil, minerals."

Mrs. Chamberlain testified this description was used to locate the property shown to her by Mrs. Warren. Mr. Chamberlain was later taken by his wife to the same property shown Mrs. Chamberlain by Mrs. Warren. This property fronted on the highway. Appellant looked at the property several times between the time the contract was executed on January 21, 1965 and the execution of the deed on April 19, 1965. He stepped off the property and ascertained the tract he was shown contained 36 acres. It is uncontradicted the land conveyed to appellant was not the tract he and Mrs. Chamberlain inspected. It appears from the aerial photographs in evidence that the two tracts do join at one point, however, it could best be described as being back of or behind the property inspected by the Chamberlains. The tract conveyed by appellees did not front on the Roswell highway, and did not join the Santa Clause Ranch. Chamberlain testified he could not reach the conveyed property by automobile. He described it as "just a mountain". Appellant assumed the First Lien Note made by appellees and paid $1,000.00 cash. He executed two Vendor's Lien Notes in the

total amount of $3,324.18 due four and nine months, respectively after the closing date. After making some four or five monthly payments on the assumed indebtedness, Chamberlain discovered he had not been deeded the property previously shown to him, and he immediatly told the real estate agency he had dealt with "I would like to have the proper piece of land shown to me, deeded to me, or my money back". The appellees refused both requests and this suit for damages was filed on September 3, 1965. Chamberlain does not seek cancellation of the deed, but claims damages alleged he has sustained as a result of the transaction.

▇▇▇ In determining whether or not error had been committed by the trial court in instructing the verdict, the evidence must be considered in the light most favorable to the losing party. Conflicts in the evidence will be disregarded and every reasonable intendment reasonably deducible from the evidence must be indulged in favor of such party and against the verdict. Anglin v. Cisco Mortgage Loan Company, 135 Tex. 188, 141 S.W.2d 935; Houston Transit Company v. McQuade (Tex.Civ. App.) 223 S.W.2d 64 (Writ Ref.); Richey v. Chicago, Rock Island & Pacific Railroad Company (Tex.Civ.App.) 420 S.W.2d 193 (Ref. N.R.E.).

▇▇▇ From the testimony offered by appellant, it is clear he intended to purchase the 36-acre tract fronting on the highway that adjoins the Santa Clause Ranch. This is the tract he stepped off to determine whether or not he "wanted to pay the price I paid for it". Both he and his wife testified unequivocally that this was the property shown to Mrs. Chamberlain by the real estate agent. We do not have the benefit of Mrs. Warren's testimony, but there is no testimony to contradict this evidence nor can it be disputed Mrs. Warren was the agent of the appellees, the owners of the land. Appellees made the listing available to all realtors who were members of the Dallas Multiple Listing Service. Al-

though the receipt of the Multiple Listing Service does not obligate brokers to do anything, when a broker accepts the owner's offer a contract is created and an agency relationship is established. Craft v. Netherton (Tex.Civ.App.) 276 S.W.2d 855. The sales contract itself designated the Judge Fite Company, by Mrs. Warren, as agents in the sales transaction and these agents were paid a commission by appellees.

It is apparent the description of the property given by the Multiple Listing Service is vague and not accurate as a guide to determine the exact identity of appellees' property. The deed, which Mrs. Bayoud testified she gave Mrs. Warren to assist her in locating the property, would be of little assistance. The deed described the property as being in Lincoln County, New Mexico, as follows:

"TOWNSHIP 11 SOUTH, RANGE 14 EAST, N.M.P.M. SE/4 SW/4--------Section 14, containing approximately 36 acres."

The sales contract executed by the parties used the same description found on the Multiple Listing Service card. Appellant testified the property deeded to him "was worthless as far as the use I wanted to put it was concerned" and that he "wouldn't even have looked at" the land actually conveyed to him.

We conclude the record, when viewed in the light most favorable to appellant, sufficiently raised issues that should have been submitted to the jury. These include whether Mrs. Warren was acting within the scope of her authority as agent for appellees in designating or locating the property for appellant; whether or not Chamberlain relied on the representation of the agent or upon his own investigation to accurately determine the identity of appellees' property; and whether or not the seller and buyer had a meeting of the minds relative to the sale. There are other questions raised, but discussion of further issues would be premature in view of the fact the issues may not be the same in all respects in the next trial.

The judgment of the trial court is reversed and the cause is remanded for a new trial.